No. 22-1980

IN THE

# United States Court of Appeals for the Federal Circuit

SENTIUS INTERNATIONAL, LLC,

*Appellant,*

*v.*

APPLE INC.,

*Appellee.*

On Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board No. IPR2020-01646

## RESPONSE BRIEF OF
## APPELLEE APPLE INC.

Mark S. Davies
Melanie L. Bostwick
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC  20005

Alyssa Barnard-Yanni
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
(212) 506-5000

*Counsel for Appellee*

# CLAIM LANGUAGE AT ISSUE

## U.S. Patent No. 7,672,985

**1.** A computer implemented method for processing database content, the method comprising the steps of:

> syndicating one or more data objects associated with a term database to one or more remote computers, wherein the one or more data objects contain data associated with one or more terms;
>
> parsing one or more documents to identify at least one term based on at least one rule;
>
> identifying content for the at least one term; and
>
> associating the at least one term with the identified content;
>
> wherein the one or more data objects associated with the term database provide a representation of at least a portion of the term database at the one or more remote computers and are used to link the identified content with the at least one term.

**5.** The method of claim **1**, wherein the content comprises one or more of definitions, related products, related services, sponsorship information, translation, and reference works.

**11**.  A computer implemented system for processing database content, the system comprising:

> a term module for parsing one or more documents to identify at least one term based on at least one rule;
>
> a processing module for identifying content for the at least one term; and
>
> a term database for storing the identified content in association with the at least one term;
>
> wherein one or more data objects associated with the term database are syndicated to one or more remote computers for providing a representation of at least a portion of the term database at the one or more remote computers and for linking the identified content with the at least one term, wherein the one or more data objects contain data associated with one or more terms.

**12**.  The system of claim **11**, wherein the content is provided by a source.

**15**.  The system of claim **11**, wherein the content comprises one or more of definitions, related products, related services, sponsorship information, translation, and reference works.

**20**. A computer implemented system for processing database content, the system comprising:
> means for parsing one or more documents to identify at least one term based on at least one rule;
> means for identifying content for the at least one term; and
> means for associating the at least one term with the identified content;
> wherein one or more data objects associated with the term database are syndicated to one or more remote computers for providing a representation of at least a portion of the term database at the one or more remote computers and for linking the identified content with the at least one term.

**21**. A computer implemented method for processing database content, the method comprising the steps of:
> syndicating one or more data objects associated with a database to one or more remote computers;
> parsing one or more source documents to identify at least one term based on one or more predetermined rules;
> identifying content for the at least one term;
> linking the content with the at least one term; and automatically associating the at least one term in the one or more source documents with at least one link;
> wherein the at least one link denotes an association between the at least one term and the linked content;
> wherein the one or more data objects associated with the database provide a representation of at least a portion of the database at the one or more remote computers; and
> wherein the linked content is displayed on a user interface based upon a user interaction with at least a portion of the one or more source documents.

**36**. A computer implemented system for processing database content, the system comprising:

a term module for parsing one or more source documents to identify at least one term based on one or more predetermined rules; and

a processing module for identifying content for the at least one term, linking the content with the at least one term, and automatically associating the at least one term in the one or more source documents with at least one link;

wherein the at least one link denotes an association between the at least one term and the linked content;

wherein one or more data objects associated with a database are syndicated to one or more remote computers for providing a representation of at least a portion of the database at the one or more remote computers; and

wherein the linked content is displayed on a user interface based upon a user interaction with at least a portion of the one or more source documents.

**39**. The method of claim **2**, wherein the source comprises one or more of a dictionary, customer created data, advertising content and reference work.

**41**. The system of claim **11**, wherein the identified content is displayed on a user interface in response to a selection of the at least one term by a user.

**42**. The system of claim **11**, wherein the identified content is stored in the term database.

**43**. The system of claim **12**, wherein the source comprises one or more of a dictionary, customer created data, advertising content and reference work.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| **Case Number** | 22-1980 |
|---|---|
| **Short Case Caption** | Sentius International, LLC v. Apple Inc. |
| **Filing Party/Entity** | Apple Inc. |

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/19/2023

Signature: /s/ Alyssa Barnard-Yanni

Name: Alyssa Barnard-Yanni

iv

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

v

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable            ☐   Additional pages attached

| | | |
|---|---|---|
| ERISE IP, P.A. | Adam P. Seitz | Clifford T. Brazen |
| Paul R. Hart | | |
| | | |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☑   None/Not Applicable            ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable            ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CLAIM LANGUAGE AT ISSUE ............................................................... i

CERTIFICATE OF INTEREST ............................................................ iv

TABLE OF AUTHORITIES ............................................................... ix

STATEMENT OF RELATED CASES ................................................... xi

INTRODUCTION .................................................................................. 1

STATEMENT OF THE ISSUES ........................................................... 3

STATEMENT OF THE CASE ............................................................... 4

    The prior art discloses methods and systems for automatically annotating documents with links to related content. ........................................................................ 4

    The '985 patent similarly discloses methods and systems for linking related content. ....................................................... 10

    Apple files a petition for inter partes review and the Board holds the challenged claims unpatentable ............................ 13

SUMMARY OF ARGUMENT ............................................................. 18

STANDARD OF REVIEW .................................................................. 20

ARGUMENT ...................................................................................... 20

I.    The Board Correctly Construed The Disputed Claim Terms To Have Their Ordinary Meaning ............................ 20

    A.    The Board correctly construed the terms "identified content" and "linked content" to have their ordinary meaning, with no added "for display" limitation. ....................................................... 22

        1.    Sentius's opening brief mischaracterizes the Board's claim construction decision ................... 23

        2.    The Board properly construed the term "identified content" to have its ordinary meaning .............................................................. 24

3.    The Board's construction of "identified content" is consistent with the specification. ...... 28

4.    Sentius's "display" argument specific to "linked content" is waived and meritless. .......... 31

B.    The unpreserved argument that "linked content" must be stored in the term database is meritless. ...... 33

II.    The Board Correctly Held The Preamble Not Limiting. ...... 36

A.    The preamble repeats claim limitations to describe the purpose of the invention and is not limiting. ........ 36

B.    At any rate, the prior art discloses the preamble. ...... 40

III.    The Board Correctly Found The Challenged Claims Unpatentable. .......................................................... 42

A.    The Board correctly found that the prior art discloses the display limitation recited in independent claims 21 and 36 and dependent claims 37, 41, and 45. .................................... 44

B.    The Board correctly found that the prior art meets the limitations disclosed in claims 11 and 42. ............ 48

C.    The Board correctly found that the prior art meets the "reference work" limitation recited in claims 5, 15, 39, and 43. .......................................................... 53

1.    Substantial evidence supports the Board's finding that the source to which a hyperlink leads meets the "reference work" limitation. ...... 54

2.    Sentius never distinguished claims 39 and 43 from claims 5 and 15. ........................................ 56

D.    Sentius's motivation-to-combine argument ignores the Board's reasoning, which is supported by substantial evidence .................................................. 58

CONCLUSION ............................................................ 63

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Med. Sys., Inc. v. Biolitec, Inc.*,
  618 F.3d 1354 (Fed. Cir. 2010) .......................................................... 37

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017) .......................................................... 59

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
  967 F.3d 1353 (Fed. Cir. 2020) ................................................ 20, 36, 37

*Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*,
  246 F.3d 1368 (Fed. Cir. 2001) .......................................................... 38

*Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*,
  8 F.4th 1331 (Fed. Cir. 2021) ....................................................... 38, 39

*Finnigan Corp. v. Int'l Trade Comm'n*,
  180 F.3d 1354 (Fed. Cir. 1999) ..................................................... 33, 34

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
  750 F.3d 1304 (Fed. Cir. 2014) .................................. 21, 22, 29, 30, 31

*HTC Corp. v. IPCom GmbH & Co., KG*,
  667 F.3d 1270 (Fed. Cir. 2012) ....................................... 33, 34, 50, 51

*Immunex Corp. v. Sanofi-Aventis U.S. LLC*,
  977 F.3d 1212 (Fed. Cir. 2020) .......................................................... 20

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) .......................................................... 28

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
  175 F.3d 985 (Fed. Cir. 1999) ...................................................... 21, 25

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007) ............................................................................ 59

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ............................................................. 29

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) ................................................... 21, 22, 29

*Merck & Co. v. Teva Pharms. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005) ................................................... 22, 30

*Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*,
  878 F.3d 1336 (Fed. Cir. 2018) ............................................................. 20

*Personalized Media Commc'ns, LLC v. Apple Inc.*,
  952 F.3d 1336 (Fed. Cir. 2020) ................................................... 31, 47

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ............................ 20, 21, 26, 34, 47, 51

*Resonate Inc. v. Alteon Websystems, Inc.*,
  338 F.3d 1360 (Fed. Cir. 2003) ............................................... 29, 31, 47

*Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*,
  962 F.3d 1362 (Fed. Cir. 2020) ............................................................. 39

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) ............................................................. 43

*Summit 6, LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015) ............................................................. 37

*Symantec Corp. v. Comput. Assocs. Int'l, Inc.*,
  522 F.3d 1279 (Fed. Cir. 2008) ............................................................. 37

**Other Authorities**

Complaint, *Sentius Int'l, LLC v. Apple Inc.*, No. 4:20-cv-477
  (N.D. Cal. July 31, 2019) ...................................................................... 13

## STATEMENT OF RELATED CASES

No appeal in or from the same proceeding was previously before this Court or any other appellate court.

Counsel is aware that the following cases may directly affect or be directly affected by this Court's decision in the pending appeal:

*Sentius Int'l, LLC v. Apple Inc.*, No. 4:20-cv-477-YGR (N.D. Cal.)

*Zoho Corp. v. Sentius Int'l, LLC*, No. 4:19-cv-001-YGR (N.D. Cal.)

## INTRODUCTION

A central issue in this case is whether the teachings of U.S. Patent No. 7,672,985 (the '985 Patent) should be limited to the patent's commercial embodiment, the RichLink system. In a thorough 59-page opinion, the Patent Trial and Appeal Board (the Board) correctly rejected Sentius's repeated attempts to import limitations found in dependent claims and the RichLink system into the independent claims. The Board instead gave the claim language its ordinary and customary meaning. It correctly determined that the preamble was not limiting because it merely describes the invention, duplicating limitations present in the body of the claims. And the Board carefully parsed the prior art to ensure it disclosed each and every limitation of every challenged claim of the '985 patent, as properly construed. After doing so, the Board held those claims unpatentable.

In its opening brief, Sentius barely engages with the ordinary meaning of the independent claim language at issue. Instead, it revives its efforts to use dependent claims to limit the scope of independent claims, and to suggest that the claims of the '985 patent are constrained by the RichLink system. Both efforts fly in the face of black letter law

that dependent claims and preferred embodiments do not limit the scope of an independent claim.

In addition to rehashing the meritless argument Sentius raised before the Board, Sentius advances a slew of new arguments. And it repeatedly suggests that the Board erred in addressing the arguments Sentius actually made, or failing to address arguments Sentius did not make, below. To give just one example, Sentius complains that the Board grouped different claims together and treated them interchangeably—but this was invariably in response to *Sentius* arguing that the claims should be considered together and treated interchangeably.

The Court should not consider any of Sentius's new arguments on appeal. And *all* of its arguments—old and new—fail, many for the reasons the Board cogently explained in its Final Written Decision. The claims of the '985 patent must be given their ordinary and customary meaning, not limited by dependent claims and preferred embodiments. The preamble is not limiting because it does not contain any limitations beyond those recited in the body of the claims. So construed, the prior

art teaches all the challenged claims and the Board correctly held
claims 1-23, 25-29, 31, 32, and 35-46 of the '985 patent unpatentable.

## STATEMENT OF THE ISSUES

1.      Did the Board correctly construe the term "identified
content" to have its plain and ordinary meaning, with no added
limitation that the content be "for display"?

2.      Did the Board correctly decline to limit the term "linked
content" to content stored in the "term database," when Sentius never
argued for such a construction below and the claim language does not
support it?

3.      Did the Board correctly determine that the preamble to the
independent claims in the '985 patent is not limiting but instead
duplicates the claim limitations in describing the purpose of the
invention?

4.      Is the Board's determination that claims 1-23, 25-29, 31, 32,
and 35-46 of the '985 patent are unpatentable under the proper
construction of the claim language supported by substantial evidence?

## STATEMENT OF THE CASE

***The prior art discloses methods and systems for automatically annotating documents with links to related content.***

Two invalidating prior art references are relevant to this appeal.[1] The first—U.S. Patent No. 5,822,539 to van Hoff, filed in 1995 and issued in 1998 in the early days of the "World Wide Web," or "WWW"— relates to the annotation of online documents.  Appx1197-1208.  At the time, the still-new WWW was attracting "new users" and "increasingly being used for commercial purposes."  Appx1202 (1:56-61).  In the midst of this "information explosion," it was "increasingly important" to link related Web pages providing additional information on a given topic. Appx1202 (1:61-2:6).  Van Hoff thus claims a "system and method for automatically annotating a received document" with cross references "to a set of documents known to contain supplemental information related to the topic of the received document."  Appx1202 (2:7-11).

---

[1] A third reference, U.S. Patent No. 6,925,496 to Ingram, bears on claim 25 of the '985 patent.  Appx198; Appx403; Appx1231.  Sentius does not raise any claim-specific challenge the Board's determination of unpatentability as to claim 25 on appeal, so we do not address Ingram here.

Before van Hoff, annotation systems could dynamically modify documents—but only when the sources derived from the same source or author, *e.g.*, the same website, as the annotated document.  Appx1202 (2:15-38).  So van Hoff targeted a way to link a web document to "remote sites."  Appx1202 (2:1); *see also* Appx1202 (2:42-46) ("[T]his system should perform the aforementioned annotating based on sources … completely unrelated to the author of the requested document.").  Its annotation system included two key pieces to enable that functionality: (1) a "directory of cross-references," *i.e.*, the remote content to be linked, Appx1207 (12:1) (claim 1), and (2) "an annotation proxy [server] configured to form a merged document," Appx1207 (12:4-5).

The annotation proxy server is designed to add "annotations comprising cross references to documents" from "at least one directory" of cross-references and "relay the merged document."  Appx1207 (12:5-8).  To do this, the annotation proxy server first applies a "match pattern," which is the set of rules "defin[ing] a character pattern (including symbols, words, characters, phrases, numbers, and the like)" to identify a term to annotate in a received document.  Appx1204 (5:38-

40).  If a match is found, "an annotation linking the portion of the document associated with the matching pattern to the paired cross reference source should be added."  Appx1204 (5:41-45), *see also* Appx1205 (7:1-11).  An embodiment of the claimed system is depicted in Figure 1:



**FIG. 1**

Appx1199.

In the preferred embodiment, the annotations "are hypertext links to other documents," *i.e.*, remote sites.  Appx1205 (8:4-5); *see also* Appx1207 (12:33-36) (dependent claim 2: "The system of claim 1, wherein the annotations are hypertext links defined using [HTML]."). However, the invention is "not limited to hypertext links and other types of annotations may be added."  Appx1205 (8:5-6); *see also* Appx1207 (12:6) (claim 1: "annotations comprising cross references" generally).

The second relevant reference is U.S. Patent No. 6,092,074 to Rodkin, filed in 1998 and issued in 2000.  Appx1209-1230.  Rodkin sought an alternative to "static" links that have to be manually updated if, for example, "the URL is changed."  Appx1217-1218 (2:17-29, 3:11-16).  Rodkin thus claims "[a] method and apparatus for automatically providing hypertext anchor codes and destination addresses" that can be "intermittently updated ... to ensure that [they] remain current." Appx1217 (1:6-11).  As in van Hoff, the first step of Rodkin's method comprises "travers[ing] the text of the article" and "compar[ing] each character string in the article to be annotated [to] the character strings in the annotation database to see if there is a match." Appx1224-1225

7

(15:36-38, 18:31-33); *see also* Appx1228-1229 (24:60-25:13) (claim 1). But the way the document is annotated is different:  "[I]f a match is found," Rodkin teaches inserting an "anchor code" "to associate the matched character string with the corresponding destination address in the destination and expiration database."  Appx1226 (19:8-14); *see also* Appx1229 (25:18-23) (claim 1).[2]  "For example, to link the text 'IBM' to the [URL] 'www.ibm.com', one might use: <A HREF="http://www.ibm.net">IBM</A>."  Appx1217 (1:54-57).

The benefit of using anchor codes (rather than just a URL) to link to an associated document is that the anchor code permits automatic database updates:  It "allows the destination addresses in the database"—*i.e.*, the location the hyperlink links to—"to be changed without changing the annotated article."  Appx1225 (17:44-62).  During "periodic update[s] of the content servers," "the central server will transmit the updated destination address" and "the next time a Web surfer activates the anchor code," "a link to the [new] destination address … will occur."  Appx1225 (17:56-62).  To facilitate such periodic

---

[2] The use of an anchor code is a preferred embodiment, but not required.  Appx1226 (19:33-40).

updates, "the system should assign expiration periods or dates to the destination addresses."  Appx1218 (3:50-52); *see also* Appx1219 (6:18-21) (discussing means for "updat[ing] destination address" "if the associated expiration date … has passed"); Appx1226 (20:63-65) (similar).  A periodic update is depicted in Figure 7:



Appx1216 (Figure 7); *see also* Appx1227-1228 (22:65-23:30).

### *The '985 patent similarly discloses methods and systems for linking related content.*

Sentius's opening brief, when describing the '985 patent, focuses on the preferred embodiment—the RichLink system—to the exclusion of the claim language actually relevant here.  It does so because the claims at issue do not require many of the features of the preferred embodiment.

Taking a step back, the '985 patent, with a priority date of 2001, followed closely on the heels of van Hoff and Rodkin.  Appx599-617.  It similarly discloses a method and system "to automatically create consistent, high quality links and associations between concepts and pieces of knowledge in a cost effective manner."  Appx610 (1:56-58).  The method recited in claim 1, representative of the other independent claims, is straightforward.  *See* Appx616 (14:8-22).  "The process begins by identifying terms of interest within a corpus of documents."  Appx610 (2:21-22).  At the outset, "data objects associated with a term database" are "syndicat[ed]" (*i.e.*, made available for automatic download) "to one or more remote computers."  Appx616 (14:10-13);

10

Appx10-11 (uncontested construction of "syndicating").[3]  Next begins

the process of "[t]erm identification."  Appx610 (2:22).  The "corpus,"

Appx610 (2:23), of "documents" is "pars[ed] … to identify at least one

term based on at least one rule."  Appx616 (14:14-15); *see also* Appx610

(2:22-30) (discussing ways to identify terms of interest).  For example,

"the rule might be to find the word NFL," so "[t]he software will …

search through a document for instances of … the word NFL."  Appx529

(record of oral argument).  After the "term" of interest is identified, the

next step is to "identify[] content for [that] term," and "associat[e]" or

"link the identified content with the … term."  Appx616 (14:16-22).  So

in the NFL example, the software "will identify content such as a

weblink to the NFL website for the term NFL" and "associate[]" the

term NFL "with the website NFL.com."  Appx529 (record of oral

argument).  In sum, claim 1 discloses a basic document annotation

method like that in the prior art, where terms to be annotated in a

document are identified and then linked to related content.[4]

---

[3] For purposes of its petition, Apple agreed to adopt the district court's
construction of "syndicated" and "syndicating" in a related case.
Appx145-146; Appx533-534.

[4] Independent claims 11, 20, 21, and 36 disclose related systems and
methods, with minor distinctions discussed below when relevant.

Other claims add additional limitations.  For example, in claims 21, 36, 37, 41, and 45, the identified or linked "content is displayed on a user interface in response to a selection of the at least one term by a user." *E.g.*, Appx617 (16:41-43) (claim 37).  And in claims 38, 42, and 46, "the identified content" "is stored in the term database." *E.g.*, Appx617 (16:44-45) (claim 38).

The preferred embodiment of the invention is "commercially known as the RichLink system," OB9, which Sentius developed, OB3-7.  One of its main features is "[t]he RichLink Content Window **170**, which displays information related to the term" in a pop-up window when a user "click[s] on a tagged term."  Appx613 (7:40-51); *see also* Appx615 (12:57-65) (similar): Appx617 (15:55-56) (claim 23 reciting "[t]he method of claim 21, where in the supplemental content is displayed in a content window").  According to Sentius, the features of the RichLink system allow "for faster retrieval" of the linked information, and therefore "less latency" than a point-to-point hyperlink system:  Instead of a URL directing a user to external content, the RichLink content is itself stored on a central server and therefore can be quickly retrieved.  OB9.  Sentius also portrays the RichLink system as allowing more control

over the way content is displayed:  Rather than relying on an external website's presentation of information, for example, the RichLink pop-up window allows more control over what content is presented, and how. OB8-9.

Although Sentius's opening brief focuses on the RichLink system and its supposed benefits, the claims are not limited to the RichLink system.  *See, e.g.*, Appx616 (14:1-6) ("Although the invention is described … with reference to th[is] preferred embodiment," "the invention should only be limited by the [c]laims included below."); *infra* at 29-31.  Indeed, one of the features of the RichLink system that Sentius highlights most in its brief—the RichLink pop-up content window—is recited in only a single dependent claim Sentius does not mention once in its brief, claim 23.  Appx617 (15:55-56).

### *Apple files a petition for inter partes review and the Board holds the challenged claims unpatentable*

In 2019, Sentius filed suit against Apple, alleging the spellcheck functionality in certain Apple products infringed the '985 patent and another patent not at issue here.  *See* Complaint ¶ 12, *Sentius Int'l,*

*LLC v. Apple Inc.*, No. 4:20-cv-477 (N.D. Cal. July 31, 2019).[5]  In

response, Apple filed a petition for inter partes review, and the Board

instituted review.

The Board first confronted three claim construction issues

relevant to this appeal.  First was the proper construction of the terms

"identified content" and "linked content," sometimes referred to

collectively by Sentius as "identified/linked content."  Appx371.

Although Apple's petition did not specifically ask the Board to construe

these terms, Appx146-150, Apple cited a district court *Markman* order

equating "content" in the '985 patent with the word "data."  *See*

Appx147, Appx1247.  Sentius contended in its Patent Owner Response

that "identified content" (and by extension "linked content") include a

further limitation:  They refer not to just any data, but "data *to be*

*displayed*" or "data … *for display*."  Appx12 (emphasis added); Appx365-

367; Appx369-373.  Thus, according to Sentius, the URL in a hyperlink

is not "identified content," because in a hyperlink the URL itself is not

displayed to the user.  Appx384-386.

---

[5] The case was originally filed in the District of Delaware, but was later
transferred to the Northern District of California.

Apple explained in reply that Sentius's proposed construction of "identified content" had no basis in the ordinary meaning of the claim language and also violated the principle of claim differentiation. Appx412-418. The Board agreed with Apple and rejected Sentius's proposed construction. Appx12-15. It first concluded that the ordinary meaning of the term "identified content" does not contain a limitation requiring content be "for display." Appx13. It observed that Sentius in its Patent Owner Response "d[id] not specifically argue that the meaning of the term departs from its ordinary and customary meaning," Appx13, and that the lexicography argument Sentius raised in its sur-reply was "an improper late argument," Appx14 n7. But it proceeded to reject those arguments on the merits anyway, finding in the specification no "commentary on the meaning of any of the above terms, let alone any definitional statements or disavowals of scope." Appx14. Finally, the Board concluded that Sentius's proposed construction of "identified content" violated the principle of claim differentiation, because dependent claims 37, 41, and 45 expressly require that identified content "is displayed." Appx15. In sum, the Board found, "the terms *content, identified content, linked content*," and the like "have

15

their ordinary and customary meanings, which do not require that the content necessarily be 'for display' or include data 'to be displayed.'" Appx15.

Next, the parties disputed the construction of the term "term database." Sentius argued that the term database "collects the content that will be displayed to a user," such that all "identified content" is stored in the "term database." Appx367-369. Thus, according to Sentius, a hyperlinked URL does not satisfy the "term database" limitation because a URL directs a user to an external source where relevant content is located, rather than storing the content itself (*e.g.*, the external source) in the term database. *E.g.*, Appx395-396. But again, Apple explained that Sentius's construction had no basis in the claim language and violated the principle of claim differentiation. Appx413-418. And again the Board agreed with Apple. Appx16-18. The Board emphasized in particular that "the explicit requirement in [dependent] claims 38, 42, and 46 that 'the identified content is stored in the term database' suggests to a person of ordinary skill in the art that respective independent claims 1, 11, and 20 do not include that requirement." Appx18.

Finally, the parties disputed whether the preamble to the claims of the '985 patent was limiting. Sentius argued the preamble—"[a] computer implemented method [or system] for processing database content"—is limiting. Appx362-365. Apple explained that, under applicable Federal Circuit precedent, the preamble is not limiting because the claims set out a complete invention and the preamble simply states the intended purpose of that invention. Appx411-412. The Board again agreed with Apple. Appx18-20. It concluded that "none of the challenged claims rely on the [preamble] for antecedent basis," as terms like "identified content" "are introduced" and fully explained "in the bodies of the independent claims." Appx19-20. At any rate, the Board further concluded "that van Hoff discloses the preamble[] of the challenged claims" even if they were deemed limiting. Appx20; Appx26-27.

With the claims so construed, the Board proceeded to consider whether claims 1-23, 26-29, 31, 32, and 35-46 of the '985 patent were obvious over van Hoff and Rodkin (and whether claim 25 was obvious over van Hoff, Rodkin, and Ingram). Appx20-59. The Board concluded that all challenged claims were unpatentable. Appx59.

17

This appeal followed.

## SUMMARY OF ARGUMENT

**I.** The Board correctly construed the claims of the '985 patent. The customary and ordinary meaning of the terms "identified content" and "linked content" (which Sentius treated as interchangeable before the Board) does not include any "for display" limitation, and Sentius's attempt to import such a limitation into the independent claims from dependent claims violates the principles of claim differentiation. § I.A. Sentius did not raise below its further argument that "linked content" must be stored in the term database, and that argument has no support of the claim language in any event. § I.B.

**II.** The Board correctly held the preamble not limiting. The preamble describes the purpose of the patented invention, duplicating the limitations set forth in the body of the claims. Even Sentius could not articulate to the Board any limitation present in the preamble not present elsewhere in the claims. Accordingly, the preamble is not limiting. § II.A. The Board found, in the alternative, that the prior art discloses the preamble. Sentius disagrees, claiming the prior art does not disclose the limitations in claims 21, 36, and 41. Sentius's

argument confirms that the preamble is not limiting, but in any event, the Board's conclusion is supported by substantial evidence.

**III.**   The Board's conclusion that the challenged claims are unpatentable as obvious is supported by substantial evidence.  The Board recognized that claims 21 and 36—unlike claims 1, 11, and 20—do recite a display limitation, and its finding that the prior art teaches that limitation is supported by substantial evidence.  § III.A.  Sentius's various challenges to the Board's findings on claims 11 and 42 are unpreserved and meritless, because claim 11 does not contain the limitation Sentius urges and Sentius does not dispute the Board's finding (supported by substantial evidence) that the prior art discloses the limitation in claim 42.  § III.B.  The Board's conclusion that the prior art meets the limitations recited in claims 5, 15, 39, and 43 is supported by substantial evidence, because the source to which a hyperlink leads may be a "reference work."  § III.C.  Finally, Sentius's motivation-to-combine argument does not engage with the Board's holding:  The Board explained that Sentius's arguments misapprehend the combination of prior art references and that, correctly understood, a person of ordinary skill in the art would have been motivated to make

the modest modification to van Hoff necessary here.  That conclusion is supported by substantial evidence.  § III.D**.**

## STANDARD OF REVIEW

Where, as here, the Board's claim construction is based solely on intrinsic evidence, that construction is reviewed de novo.  *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212, 1218 (Fed. Cir. 2020); *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1369 (Fed. Cir. 2020) (reviewing de novo whether a preamble is limiting).  The Board's factual findings, however, are reviewed for substantial evidence.  *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1340, 1346-48 (Fed. Cir. 2018) (reviewing obviousness finding for substantial evidence).  If different "conclusions may reasonably be drawn from the evidence in the record, [the Board's] decision to favor one conclusion over the other … must be sustained upon review for substantial evidence."  *Id.* at 1341.

## ARGUMENT

I.   **The Board Correctly Construed The Disputed Claim Terms To Have Their Ordinary Meaning.**

Claim terms "are generally given their ordinary and customary meaning*." Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)

(en banc) (internal quotation marks omitted). This means "[g]eneral descriptive terms will ordinarily be given their full meaning" and "modifiers will not be added to broad terms standing alone." *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999).

In ascertaining ordinary meaning, one must read claim language "in the context of the entire patent." *Phillips*, 415 F.3d at 1313. "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15. "Claims must [also] be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc). But "the specification … only compel[s] departure from the plain meaning" of a claim term "in two instances: lexicography and disavowal." *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014). Both are governed by "exacting" standards. *Id.* Although "[t]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess," *Phillips*, 415 F.3d at 1316, "[t]he caveat" to this

21

principle is that "any special definition given to a word must be *clearly defined* in the specification," *Markman*, 52 F.3d at 980; *see also GE Lighting*, 750 F.3d at 1309; *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005).

On appeal, Sentius challenges the Board's construction of the terms "linked content" and "identified content."  OB26-32.  This brief takes Sentius's arguments as to those terms in reverse order.  It first addresses Sentius's unavailing attempt to add a "for display" limitation to both terms, contrary to their ordinary meaning and in violation of the principle of claim differentiation, § I.A; OB29-32, and then turns to Sentius's unpreserved and meritless argument that "linked content" must be "stored in the term database," § I.B; OB26-29.

**A.    The Board correctly construed the terms "identified content" and "linked content" to have their ordinary meaning, with no added "for display" limitation.**

As noted above, the Board construed the terms "identified content" and "linked content" to "have their ordinary and customary meanings," which the Board held did "not require that the content necessarily be 'for display' or include data 'to be displayed.'"  *Supra* at 15-16; Appx15. In so holding, the Board rejected Sentius's contention that the term

"identified/linked content" carries the additional limitation that said

content be "for display." Appx365; Appx371. The Board's conclusion

was correct. The ordinary meaning of the terms "identified content"

and "linked content" does not include any requirement that such

content be "for display." Sentius's contrary arguments run afoul of

black letter law that dependent claims and preferred embodiments do

not limit the scope of independent claims.

### 1. Sentius's opening brief mischaracterizes the Board's claim construction decision.

In its brief, Sentius attacks a strawman version of the Board's

argument. OB29-32. The way Sentius tells it, the Board's analysis

turned solely on claim differentiation. OB29-30. This inaccurate

narrative ignores much of the Board's reasoning about the claims'

ordinary meaning.

The Board began by observing that a person of ordinary skill in

the art would not have understood the ordinary and customary meaning

of the terms "identified content" and "linked content" to add the further

limitation that the content be "for display." Appx13. The Board then

found "no clear evidence" "that the meaning of the term departs from its

ordinary and customary meaning." Appx13. "For example," the Board

noted, "there is nothing in the plain language of independent claims 1, 11, or 20 that explicitly mentions that the content is intended 'for display,'" nor "any definitional statements or disavowals of claim scope" in the specification or prosecution history.  Appx14.

Only then did the Board come to the issue of claim differentiation, in response to Sentius's attempt to read dependent claim limitations into the independent claims.  As is discussed in more detail below, the Board ultimately rejected Sentius's argument, reasoning that because the dependent claims require that identified content "is displayed," the term "identified content" in the independent claims does not include any display limitation.  Appx15.

### 2. The Board properly construed the term "identified content" to have its ordinary meaning.

The term "identified content" appears in numerous claims, but independent claim 1 is a representative example.  The steps in the claimed method include "parsing one or more documents to identify at least one term" for annotation, "identifying content for the at least one term," and then "associating the at least one term with the identified content."  Appx616 (14:14-17) (claim 1).  In this context, the term "the

identified content" simply refers back to the content that was described as being identified in an earlier step.  In other words, the term "identified content" is a "[g]eneral descriptive term[]" meaning any content identified during the aforementioned process.  *Johnson Worldwide*, 175 F.3d at 989.  The term must "be given [its] full meaning."  *Id*.  It is impermissible to add a modifier like "for display" to the term "identified content" to limit its ordinary meaning.  *Id*.

The Board's ordinary-meaning construction of "identified content" is reinforced by looking to claim 1 as a whole.  After "identifying content for the at least one term," the claimed method requires "associating the at least one term with the identified content," Appx616 (14:16-17), also described as "link[ing] the identified content with the at least one term." Appx616 (14:21-22).  Nothing in the claimed method is inconsistent with the "identified content" being (for example) a URL "associat[ed]" or "link[ed]" to the term via hyperlink, although the URL in a hyperlink is not "for display."  In sum, the ordinary meaning of the term "identified content" does not require that the content be for display.

Because Sentius's claim construction finds no support in claim 1, Sentius before the Board tried to use dependent claims to limit the

scope of the independent claim.  It identified as an example claim 37, a
dependent claim disclosing "[t]he method of claim 1, wherein the
identified content is displayed on a user interface in response to a
selection of the at least one term by a user."  Appx617 (16:41-43).
Sentius argued to the Board that, because the dependent claim requires
that content *be* displayed, the independent claim must require such
content be *for* later display.  Appx365; Appx371.  The principle of claim
differentiation says precisely the opposite:  If a limitation appears in a
dependent claim, the presumption is that the limitation is absent in the
independent claim.  *Phillips*, 415 F.3d at 1314-15.

Sentius tries to get around this problem by arguing that content
"for display" is different than content actually displayed.  OB29;
Appx441-442.  But the Board explained why that argument falls apart:
If the dependent claims require that content "is displayed," then under
the principle of claim differentiation, the independent claims also
encompass "identified content" "that [is] never displayed"—and if some
identified content is never displayed, that content is plainly "not 'for
display.'"  Appx15.

Lacking a persuasive response to the Board's reasoning, Sentius tries to change its claim construction argument on appeal. In dependent claims 37, 41, and 45, the identified content "is displayed on a user interface *in response to a selection of the at least one term by a user*." OB30; *see also* Appx617 (16:41-43). So Sentius argues now that, applying the principle of claim differentiation, one should infer that the identified content in independent claims 1, 11, and 20 "is displayed even if it is not in response to a user selection," not that it isn't displayed at all. OB30. This new argument is flatly inconsistent with Sentius's argument before the Board: Sentius stated in response to Apple's claim differentiation argument that claims 1, 11, and 20 do not require identified content *be displayed*, just that it be "for display." *See* Appx442 (Sentius clarifying it was "not contend[ing] that claims 1, 11, and 20 require the identified content *be displayed*, which would render th[e] limitation in claims 37, 41, and 45 redundant"). Indeed, Sentius makes the same point elsewhere in its opening brief. *E.g.*, OB29 ("The Board overlooked the difference between content identified for display … and identified content that is displayed"). Thus, Sentius has waived any argument that claims 1, 11, and 20 require identified content *be*

*displayed. See, e.g., Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346-47 (Fed. Cir. 2001) (parties cannot take a new position on claim construction on appeal—especially when the new construction "is inconsistent with [the] position it advocated" previously).

Notwithstanding all the ink spilled on the principle of claim differentiation before the Board and in this Court, it is not dispositive. Even if Sentius's proposed claim construction did not violate the principle of claim differentiation, there is simply no basis in the claim language to import a "for display" limitation into the term "identified content" as a matter of ordinary meaning. *Supra* at 24-25.

### 3. The Board's construction of "identified content" is consistent with the specification.

Moving beyond claim language, Sentius argues that the Board's claim construction is inconsistent with the specification. Sentius's attempts to narrow the claim language based on the specification fail.

To begin, Sentius is wrong that the specification supports its construction. Quite the contrary: The specification itself provides examples of "identified content" that are not "for display." Particularly relevant here, it repeatedly mentions links specifically. *See, e.g.*, Appx615 (11:37-39); Appx616 (13:65-67). As explained above, in a

hyperlink, the actual link—the URL—is not necessarily displayed. Appx385. The specification also mentions sound files. Appx615 (11:38). As the Board observed in a footnote, "[a]lthough a sound file might be associated with a displayable control window," "the underlying sound file, itself," is not "displayed" or "for display." Appx15 n.8.

Even if all the embodiments of identified content listed in the specification were content for display, however, that fact would not limit the scope of the claim language. *See GE Lighting*, 750 F.3d at 1309 ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004))). It is of course true that "[c]laims must be read in view of the specification." *Markman*, 52 F.3d at 979. But "the written description is not a substitute for, nor can it be used to rewrite, the chosen claim language." *Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1364 (Fed. Cir. 2003). The circumstances where it is appropriate to "depart[] from the plain meaning" of claim terms in light of the specification are

extraordinarily narrow, and the standard for doing so (under the doctrine of lexicography, for example) is "exacting." *GE Lighting.,* 750 F.3d at 1309. Sentius does not explicitly argue lexicography; indeed, the Board found below that Sentius's lexicography argument in its sur-reply was untimely, Appx14 n.7, and Sentius does not contest that finding. At any rate, the specification does not come close to "clearly express[ing] [an] intent" to "redefin[e] the meaning of [identified content] away from [its] ordinary meaning." *Merck*, 395 F.3d at 1370; Appx14 n.7.

Sentius nonetheless claims that the Board's construction "excludes disclosed embodiments which describe the entry of annotation content for display into a database." OB30. That is wrong. Sentius seeks to add a limitation to claim 1. The Board's construction rejecting that limitation *broadens* the claim language. Construing claim 1 *not* to require that the identified content be "for display" does not exclude from the scope of the claim identified content that happens to be "for display." In other words, Sentius tries to limit the claim language to disclosed embodiments. That is impermissible: "[A] particular embodiment appearing in the written description may not be read into a

claim when the claim language is broader than the embodiment."
*Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1343
(Fed. Cir. 2020) (quoting *Resonate Inc.*, 338 F.3d at 1364-65); *see also*
*GE Lighting,* 750 F.3d at 1309 ("A patent that discloses only one
embodiment is not necessarily limited to that embodiment."). Sentius's
contention that certain embodiments are narrower than the ordinary
meaning of claim 1, even if true, is not a reason to "rewrite[] the chosen
claim language" to limit the claims. *Resonate Inc.*, 338 F.3d at 1364.

### 4. Sentius's "display" argument specific to "linked content" is waived and meritless.

Before the Board, Sentius's argument for its desired "for display"
construction focused on the term "identified content" in claims 1, 11,
and 20. Appx371. Grasping at straws, Sentius now criticizes the Board
for "fail[ing] to provide its reasoning for construing 'linked content' as
also not requiring content for display." OB31.

That argument is a red herring. As Sentius notes, claims 21 and
36 specify that "linked content is displayed." Appx617 (15:49, 16:38).
In other words, the independent claims themselves expressly disclose
the display limitation. The Board recognized as much, and applied the
display limitation in its obviousness analysis as to claims 21 and 36.

31

Appx38-41; *infra* at 44-47. What the Board essentially held is that the display limitation in claims 21 and 36 derives from the express requirement that the linked content be displayed, not the term "linked content" itself.[6] As a result, Sentius's claim construction argument as to the term "linked content" in claims 21 and 36 has no practical consequence: It simply does not matter whether "linked content," standing alone, would require the linked content be "for display" when the claim goes on to specify that the "linked content is displayed."

At any rate, Sentius did not advance any independent claim-construction argument with respect to linked content. After making the argument for its construction of "identified content," Sentius stated, in a single sentence, that "[t]he same reasoning applies to independent claims 21 and [3]6"—claims using the term "linked content" rather than "identified content." Appx371. Indeed, it repeatedly treated the terms

---

[6] As Sentius observes, the claim differentiation argument applicable to claims 1, 11, and 20 does not apply to claims 21 and 36 because no limitations are added in dependent claims. OB31. But the Board never said otherwise. Its claim differentiation analysis is limited to independent claims 1, 11, and 20. *See* Appx15. But the remainder of the Board's analysis—namely, its consideration of ordinary meaning and the specification—applies equally to claims 21 and 36 and illustrates no "display" limitation inheres in the term.

"identified content" and "linked content" as interchangeable, going so far as to describe the term requiring construction as "identified/linked content." Appx371; *see also* Appx362 (listing "identified content" and "linked content" together as the third of "four claim terms" requiring construction). Sentius has therefore waived any argument that the Board erred by failing to adopt different claim-construction reasoning specific to linked content. *See, e.g.*, *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1282 (Fed. Cir. 2012) (waiver doctrine prevents parties from "inviting an alleged error below only to raise it on appeal"); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1362-63 (Fed. Cir. 1999) (finding waiver and observing "[a] party's argument should not be a moving target").

## B. The unpreserved argument that "linked content" must be stored in the term database is meritless.

Beyond the display issue addressed above, Sentius further argues that "linked content in claims 21 and 36" must be construed to "necessarily reside[] in the term database." *E.g.*, OB28. But Sentius never argued below that "linked content" must be stored in a "term database." Appx361-373 (claim construction arguments). Its claim-construction argument regarding "linked content" focused solely on

whether such content must be "for display."  Appx371-372; *supra* at 31-33.  This argument is accordingly waived.  *HTC Corp.*, 667 F.3d at 1282; *Finnigan Corp.*, 180 F.3d at 1362-63.

It is also meritless.  The term "term database" does not appear in any claims using the term "linked content," namely claims 21 and 36.  Appx617 (15:35-16:22); *cf.* OB26-29.  The two terms simply have nothing to do with each other.  Sentius seems to have recognized as much before the Board.  Unlike "linked content" and "term database," the terms "identified content" and "term database" do appear together in the same claim.  *E.g.*, Appx616 (14:8-22) (claim 1).  And Sentius argued to the Board that *identified content*—not linked content—must be stored in the term database, at least as to claims 38, 42, and 46 (but not claims 1, 11, and 20).  Appx367-371.  Incidentally, Sentius framed this as a question of claim construction related to the term "term database," not "identified content."  Appx367-371.[7]  Given these facts, it is unsurprising that the Board's construction of "term database"

---

[7] The Board's construction of "term database" in claims 1, 11, and 20 is correct. *See infra* at 48-51.  Dependent claims 38, 42, and 46 contain the further limitation that "the identified content is stored in the term database," Appx617 (16:43-65), making clear that limitation "is not present in the independent claim[s]." *Phillips*, 415 F.3d at 1315.

addressed identified content, but "did not address the term linked content." OB28; *see also* OB29 (the Board "made no findings and presented no reasoning" related to linked content in construing "term database").

In advancing its argument on this supposed "storage" limitation specific to "linked content," Sentius also rehashes with respect to this limitation an argument it makes with respect to the display limitation. According to Sentius, the terms "identified content" and "linked content" "are different" and "should be given separate constructions," OB26, 29, and the Board erred in "conflating" these two terms and "treat[ing] [them] … as if they were interchangeable," OB26, 29. But Sentius never argued to the Board that "identified content" and "linked content" were different terms requiring different constructions. With respect to the "for display" limitation described above, it did the opposite and treated the terms interchangeably. *Supra* at 32-33. And with respect to "term database," as just explained, Sentius never argued the term had any relevance to "linked content" at all. *Supra* at 34. Sentius's contention that the Board erred in not distinguishing between

"identified content" and "linked content" with respect to arguments Sentius never made is nonsensical.

In sum, the Court should reject Sentius's late-breaking attempt to limit the term "linked content" to content stored in the term database, which has no basis in the claim language in any event.

## II. The Board Correctly Held The Preamble Not Limiting.

Independent claims 1, 11, 20, 21, and 36 each begin with a similar preamble. Claim 1, for example, begins: "A computer implemented method for processing database content, the method comprising the steps" that follow. Appx616 (14:8-9). The Board correctly concluded that this preamble is not limiting, because it simply describes the disclosed invention and duplicates the claim limitations. § II.A. Even if it were limiting, the prior art discloses the preamble. § II.B.

### A. The preamble repeats claim limitations to describe the purpose of the invention and is not limiting.

The preamble to the claims of the '985 patent is not limiting because it does not add anything to the claim language.

"Whether a preamble is limiting is determined on the facts of each case," viewed in context. *Bio-Rad Lab'ys*, 967 F.3d at 1369 (quotations omitted). "If the claim uses the preamble only to state a purpose or

intended use for the invention, then the preamble is not limiting." *Id.* Relatedly, if a preamble "is reasonably susceptible [of] being construed to be merely duplicative of the limitations in the body of the claim," it is not limiting. *Symantec Corp. v. Comput. Assocs. Int'l, Inc.*, 522 F.3d 1279, 1288-89 (Fed. Cir. 2008).

The preamble of claims 1, 11, 20, 21, and 36 describes the purpose of the patented invention; it does not add any limitation and thus cannot be limiting. Sentius made this clear in its Patent Owner Response: When addressing whether the challenged were obvious over the prior art, Sentius said this about the preamble: "[The prior art] does not disclose the claimed method of processing database content as will be discussed in connection with the claimed steps." Appx380. If Sentius could not articulate to the Board any independent requirement deriving from the preamble as opposed to the body of the claims, the preamble is not limiting. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1292 (Fed. Cir. 2015) ("[T]he preamble to claim 38 is duplicative of the limitations in the body of the claim and merely provides context for the limitations."); *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1360 (Fed. Cir. 2010) ("Removal of the duplicative

preamble language would neither alter the scope of the claims nor introduce ambiguity as to their coverage.").

In its opening brief, Sentius argues that the preamble is limiting because the claims "all recite steps and modules for processing content." OB33. But that is precisely why the preamble is *not* limiting: It is stating the purpose of the invention, rather than adding any additional limitation absent elsewhere.

Sentius further cites *Eli Lilly & Co. v. Teva Pharmaceuticals International GmbH*, which held that preambles to method claims *can* be limiting if the essence of "what the method 'does'" appears in the preamble. 8 F.4th 1331, 1341 (Fed. Cir. 2021) (collecting cases). As a threshold matter, the preamble here, unlike in *Eli Lilly*, is not limited to method claims; the system claims begin with the same preamble. *E.g.*, Appx616 (14:51-52) (claim 11). At any rate, even *Eli Lilly* recognized that preambles in method claims are not always limiting. 8 F.4th at 1341. (citing *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368, 1375-76 (Fed. Cir. 2001)). As relevant here, preambles are not limiting when they are duplicative of the remainder of the claims. *See supra* at 37. That was not the case in *Eli Lilly*, where

the preamble provided a critical piece of information missing from the method claims: the particular medical condition the claimed method was designed to treat. 8 F.4th at 1342. As this Court explained, "[t]he preambles limit the scope of the claims because these claims would not read on, for example, the performance of the same method step to treat other conditions." *Id*. Here, however, the preamble does not fill in any such gaps or provide any missing information.

On a slightly different track, Sentius argues (at 34-35) that the term "database content" in the preamble provides "antecedent basis for at least one later claim term in the independent claims." *Eli Lilly*, 8 F.4th at 1343. That's wrong for two reasons. First, the claims do not rely on the "preamble terms to define positive limitations in the body of claims." *Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*, 962 F.3d 1362, 1368 (Fed. Cir. 2020). The term "database content" does not even appear in the claims. Instead, the claims independently recite both a database limitation and a content limitation, which can be understood on their own without reference to the preamble. For example, as explained above, the claim term "identified content" refers to the content identified in an earlier step in the claims; it does not rely

on the preamble for antecedent basis. *See supra* at 24-25. In fact, Sentius took the position before the Board that "database content" (in the preamble) and "identified content" (in the claims) mean different things. For example, Sentius has tried to import a "for display" limitation into the term "identified content." *Supra* at 22-33. But Sentius conceded before the Board that the term "database content" does *not* include any "for display" limitation, and encompasses content not for display (like metadata). Appx363. "Database content" cannot provide antecedent basis for the term "identified content" if (according to Sentius) the two terms mean different things.

## B. At any rate, the prior art discloses the preamble.

Even if the Board erred in concluding the preamble was not limiting, any error was harmless. The Board alternatively held that even if the preamble were limiting, van Hoff discloses the preamble because it discloses the database and content limitations in the claims themselves. Appx20; Appx26-27. This factual finding is entitled to deference, subject to substantial evidence review.

Sentius devotes only a paragraph to refuting the Board's conclusion. According to Sentius, van Hoff does not disclose the

preamble because it does "not store or syndicate display content" as required by claims 21, 36, and 41.  OB36-37.  As a threshold matter, Sentius's argument confirms that the preamble is not limiting:  The limitations that van Hoff does not disclose, according to Sentius, do not derive from the preamble but the body of the claims themselves.  OB37.

As for the substance, Sentius's preamble argument fails for the same reasons its claim-construction and substantial-evidence arguments as to claims 21, 36, and 41 fail.  With respect to the supposed storage limitation, Sentius reiterates its waived and meritless claim construction argument that the "linked content" in claims 21 and 36 must be stored in the term database.  The Board did not err in declining to read such a limitation into the claims.  *See supra* at 33-36. As for the display limitation, Sentius reiterates its substantial-evidence challenge as to the Board's determination of unpatentability as to claims 21, 36, and 41.  OB37-45.  As is discussed in more detail below, the Board's conclusion that van Hoff and Rodkin disclose the display limitation in claims 21, 36, and 41 (as well as claims 37 and 45) is supported by substantial evidence.  *Infra* at 44-48.

Accordingly, if this Court affirms the Board's construction, any error in assessing whether or not the preamble is limiting would be harmless.

## III. The Board Correctly Found The Challenged Claims Unpatentable.

Regardless of whether this Court adopts Sentius's proposed construction of the independent claims, the limitations in question are present in certain dependent claims. *E.g.*, Appx617 (16:41-43) (claim 37 reciting "[t]he method of claim 1, wherein the identified content is displayed…"). And the Board found the prior art disclosed those limitations in connection with those dependent claims. The Board was correct. To the extent Sentius mounts specific substantial-evidence challenges to the Board's findings, its challenges are meritless, as the Board's conclusions are supported by substantial evidence at every turn.

Contrary to Sentius's suggestion, the Board acknowledged that claims 21 and 36 of the '985 patent recite the display limitation absent from claims 1, 11, and 20, and it correctly held that the prior art taught that limitation. §III.A. The Board also correctly concluded that the prior art satisfies claims 11 and 42: Claim 11 does not require that

identified content be stored in the term database, and while claim 42 does contain such a requirement, Sentius does not challenge the Board's finding that it is satisfied.  §III.B.  The Board was right to find that the prior art teaches claims 5, 15, 39, and 43, because the linked source— not the link itself—may be a "reference work."  §III.C.  Finally, Sentius's motivation-to-combine argument is not responsive to the Board's decision, and meritless in any event.  §III.D.

If this Court finds the Board's conclusions supported by substantial evidence, it should affirm:  If the prior art discloses the dependent claims in question, there can be no dispute it discloses the limitations Sentius seeks to add to the independent claims from the dependent claims.  And to the extent Sentius has not challenged the Board's finding that the prior art discloses certain of the '985's dependent claims, any such argument is waived.  *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).

**A.    The Board correctly found that the prior art discloses the display limitation recited in independent claims 21 and 36 and dependent claims 37, 41, and 45.**[8]

As Sentius observes (at OB39) and as is explained above, *see supra* at 31-33, claims 21 and 36 differ from claims 1, 11, and 20:  While the latter claims relate to "identified content," the former relate to "linked content."  And unlike claims 1, 11, and 20, claims 21 and 36 expressly require that "linked content *is displayed* on a user interface based upon a user interaction."  Appx617 (15:49-50, 16:38-39) (emphasis added).  Similarly, dependent claims 37, 41, and 45 teach that "identified content is displayed on a user interface in response to a selection … by a user."  Appx617 (16:40-62).  Apple and the Board recognized this distinction and accounted for the display limitation in claims 21, 36, 37, 41, and 45.  In particular, Apple through its expert demonstrated—and the Board agreed—that van Hoff and Rodkin disclosed the display limitation with respect to these claims, because a user clicking on a hyperlink would display the linked document in a

---

[8] Sentius discusses claim 41 in a separate section of its brief, OB46 (in § V.E), but the argument is the same as with claims 21, 36, 37, and 45, so we address it here.

web browser.  Appx187-189; Appx424; Appx427-428; Appx1149-1152 (Terveen declaration); Appx38.

Sentius's challenge to the Board's Final Written Decision on this front begins with a strawman:  It argues that "the Board ignored the specific requirements of claims [21, 36, and 41] that the linked database content is displayed."[9]  OB40.  In other words, Sentius pretends the Board never considered whether claims 21, 36, and 41 satisfied the "display" limitation.  That is simply not true.  The Board expressly held that Rodkin, in conjunction with van Hoff, teaches "that the linked content is displayed on a user interface."  Appx39; *see also generally* Appx38-41.  Sentius later admits as much when it proceeds to dispute the Board's "conclu[sion] in regard to the 'display' element of claim[] 21."  OB42.  In sum, Sentius is wrong to suggest that the Board never considered whether claims 21, 36, and 41 meet the "display" limitation.

As for the merits of the Board's findings on these claims, the Board found that the term "linked content" can be read in context to

---

[9] Sentius does not specifically mention claims 37 and 45, but the Board considered those two claims together with claims 21, 36, and 41, as they all recite a display limitation.  The analysis in this section applies equally to all five claims.

refer to "the document linked via the hypertext link annotation." Appx40 (citing Appx424). And the linked document is indeed "display[ed] on a user interface based upon a user interaction with" the hyperlink, Appx617 (15:49-51)—namely, when a user clicks on the hyperlink, the server will display the linked document in a web browser. Appx187-189; Appx427-428; Appx1149-1152 (Terveen declaration). The Board thus found the display limitation satisfied. Appx40-41.

Sentius makes two arguments in response. First, it suggests that the Board's conclusion is wrong because the preferred embodiment of the claims displays linked content in a pop-up "RichLink Content Window," rather than directing the user to the new document. OB43. But claims 21, 36, and 41 do not specify that the linked content must be displayed in a pop-up RichLink Content window. Appx617 (15:35-52, 16:23-39). Sentius offers no justification in support of its attempt to read a particular *method* of display into these claims. Its argument contradicts this Court's precedent explaining that claims cannot be limited to the preferred embodiment, nor independent claims limited by

46

dependent claims.[10]  *See Personalized Media*, 952 F.3d at 1343; *Resonate Inc.*, 338 F.3d at 1364-65; *Phillips*, 415 F.3d at 1314-15.

Sentius also makes an argument based on "Lexicon Object 920." OB43-44.  The "lexicon object" limitation is present in claim 8, dependent on claim 1; it is not present in claims 21, 36, 37, 41, and 45. Appx616 (14:42-44).  At any rate, Sentius did not make any independent argument as to claim 8 below, Appx394, and the Board found the "lexicon object" limitation satisfied, Appx49-50.

Finally, Sentius protests that even if van Hoff and Rodkin teach the display limitation under the Board's logic, they do not disclose the further limitations that displayed content be "entered into and syndicated from a database."  OB41, 42; *see also* Appx617 (15:37-38). As noted above, Sentius never argued to the Board that "linked content" in claims 21 and 36 must be entered into—*i.e.*, stored in—a database. *See supra* at 31-33.  At any rate, this argument has nothing to do the "display" limitation in claims 21, 36, and 41, but instead relates to the

---

[10] In any event, as the Board concluded elsewhere, a web browser satisfies the "content window" limitation in claim 23.  Appx43-44.

"term database" limitation in different claims, addressed immediately

below.

### B. The Board correctly found that the prior art meets the limitations disclosed in claims 11 and 42.[11]

What Sentius describes as a substantial-evidence challenge to the

Board's findings on independent claim 11 and its dependent claim 42 is

in large part a claim construction argument. As discussed above, *supra*

at 34 n.7, the Board concluded that claims 1, 11, and 20 do not require

the "identified content" to be stored in the term database. Appx18.

This conclusion was rooted, in part, on "the explicit requirement in

[dependent] claims 38, 42, and 46 that 'the identified content is stored

in the term database,'" which "suggests to a person of ordinary skill in

the art that respective independent claims 1, 11, and 20 do not include

that requirement." Appx18. Sentius takes issue with the Board's

---

[11] Sentius's header V.E mentions claim 41, but its arguments relate to claim 11 and claim 42, which recites "[t]he system of claim 11, wherein the identified content is stored in the term database." Appx617 (16:53-54). Claim 41 on the other hand, addressed in the previous section, recites "[t]he system of claim 11, wherein the identified content is displayed on a user interface in response to a selection of the at least one term by a user." Appx617 (16:50-52).

conclusion as to claims 11 and 42, OB47, but its argument is procedurally improper and substantively meritless.

As a threshold matter, Sentius argues that the Board improperly "grouped" claims 1, 11, and 20 together for claim-construction purposes, OB45, and therefore did not conduct a "separate claim differentiation analysis for claim 42" (which depends on claim 11) "than … [for] claims 38 and 46" (which depend on claims 1 and 20). OB47. Sentius ignores that the Board considered these together because *Sentius* grouped the claims together.

Starting in its claim construction argument before the Board, Sentius treated independent claims 1, 11, and 20, as well as their dependent claims, interchangeably. Appx368 ("Dependent claims 38 (dependent from claim 1[)], 42 (dependent from claim 11) and 46 (dependent from claim 20) … do not violate any claim differentiation principles because claims 1, 11 and 20 do not require that the identified content be specifically stored in a term database."). Sentius did not offer a different claim construction analysis, or make a different claim-differentiation argument, for independent claim 11 and dependent claim 42 than for the other claims, and therefore cannot complain that

49

the Board failed to do so.  *See, e.g.*, *HTC Corp.*, 667 F.3d at 1282 (waiver prevents parties from "inviting an alleged error below only to raise it on appeal").

Sentius's complaint is particularly unwarranted because *despite* Sentius grouping these claims together, the Board acknowledged the difference that Sentius had failed to appreciate below: that "[u]nlike the other independent claims, claim 11"—a system claim—"recites 'a term database for storing the identified content.'" Appx18 n.10.  The Board nonetheless explained why system claim 11 reciting the existence of the term database did not undercut the claim-differentiation argument common to all three claims.  Appx18 n.10.

The Board was right.  Independent claim 11 recites a system comprising, in relevant part, "a term database for storing the identified content."  Appx616 (14:57-58).  Dependent claim 42 further claims "[t]he system of claim 11, wherein the identified content is stored in the term database."  Appx617 (16:53-54).  Under the principle of claim differentiation, the system taught in independent claim 11 must contain a term database where identified content *can* be stored, but that claim does not require identified content *actually* be stored here; the actual

50

storage requirement derives from dependent claim 42. Stated

otherwise, by reciting the added limitation that "the identified content

*is stored* in the term database," Appx616-617 (14:57-58, 16:53-54)

(emphasis added), dependent claim 42 suggests that claim 11 does not

require that identified content be stored in the disclosed term database.

*Phillips*, 415 F.3d at 1314-15.

Indeed, Sentius made precisely that point below when it stated

that "claims 1, 11, and 20 *do not require that the identified content be*

*specifically stored in a term database.*" Appx368 (emphasis added). Its

current contention that the Board erred by "read[ing] the term database

limitation of claim 11 as not requiring identified content to be stored in

the term database," OB47, is not only wrong for the reasons explained

above, but it is contrary to what Sentius told the Board. Sentius cannot

now change its position. *See, e.g.*, *HTC Corp.*, 667 F.3d at 1282.

As for obviousness, Sentius argues that the Board should have

considered whether the prior art taught claim 11 even under the

Board's construction. OB46. To be clear, it did, and agreed with Apple.

Appx36-37. But Sentius's obviousness arguments relied solely on its

proposed construction; it never argued that it could prevail under

Apple's construction, ultimately adopted by the Board. Indeed, Sentius failed to make any unique arguments specific to independent claim 11. After arguing that claim 1 and its dependent claim did not satisfy the "for display" limitation, Appx397, it continued: "The Board should also rule for lack of demonstrated invalidity of Claim 11 and its dependent claims for all the same reasons previously discussed in connection with claim 1 and its dependent claims." Appx398. Nowhere did Sentius argue to the Board, as it does now, that the analysis for claim 11 was in any way different from claim 1. It never argued that the prior art failed to disclose claim 11's particular recital of "a term database for storing the identified content." Appx396-398. Sentius cannot now claim that the Board erred by not considering some claim-11-specific argument it never made. *Supra* at 33.

Claim 42, unlike claim 11, expressly discloses a system "wherein the identified content is stored in the term database." Appx617 (16:53-54). Sentius does not appear to advance any substantial-evidence argument specific to claim 42 (or claims 38 or 46) in its brief. In other words, it does not appear to challenge the Board's conclusion that the prior art teaches "identified content … stored in the term database" and

therefore discloses dependent claims 38, 42, and 46.  Appx55-56; *see also* Appx157-163; Appx1106-1110 (Terveen declaration).  Its argument is focused solely on claim 11, as well as reiterating its "display" limitation argument.  OB46-48.  Accordingly, Sentius has waived any challenge to the Board's finding that the prior art teaches the storage limitations of dependent claims 38, 42, and 46.  But that finding is supported by substantial evidence in any event.  *E.g.*, Appx1106-1110 (Terveen declaration).

### C.     The Board correctly found that the prior art meets the "reference work" limitation recited in claims 5, 15, 39, and 43.

Dependent claims 5, 15, 39, and 43 recite the method or system of claims 1, 2, 11, and 12 "wherein the content" or "source comprises" specifically enumerated types of documents, including dictionaries and "reference works."  Appx616-617 (14:32-34, 15:8-10, 16:46-48, 16:55-57).  The Board concluded that the prior art satisfies these limitations.  Appx44-46.  Sentius challenges the Board's conclusion on both substance and procedure; both arguments are equally meritless.

**1.    Substantial evidence supports the Board's finding that the source to which a hyperlink leads meets the "reference work" limitation.**

Sentius's argument spans numerous pages, but its underlying contention is simple:  The prior art is about links, says Sentius, and a link is not a "definition[], related product[], related service[], sponsorship information, translation, [or] reference work[]," as required in representative claim 5.  Appx616 (14:33-34); OB53.  That argument misunderstands the Board's decision.  The Board didn't hold that "links should be imported into the limited categories of content specified in claims 5 and 15."  OB54.  The Board recognized the obvious fact that a link is not a reference work.  Appx45-46.  What the Board explained was that *the source to which a link* leads may be a reference work and therefore fall within the scope of dependent claim 5.  Appx46.

Thus, the real question the Board confronted was whether the term "identified content" in the independent claims—*e.g.*, claim 1—encompasses the source to which a link leads, or just the link itself. (because the "content" recited in dependent claim 5 is the "identified content" from claim 1).  Appx46.  In its Institution Decision, the Board expressed a preliminary view that "identified content" was limited to

54

the link itself.  Appx316-317.  But after fuller consideration with the benefit of complete briefing and oral argument, the Board in its Final Written Decision ultimately found that *both* "a link to a reference work, and the reference work itself" meet the "identified content" limitation. Appx46; *see also* Appx40 (similar analysis with respect to the display limitation in claims 21, 36, 37, 41, and 45).

The Board's Final Written Decision got it right, and is certainly supported by substantial evidence.  Looking at claim 1, the "identified content" is the content identified by the claimed method that is to be associated with the "at least one term."  Appx616 (14:16-22); *supra* at 24-25.  A URL that is associated with the one term via hyperlink is "identified content" within the meaning of the claim term.  *Supra* at 25. But the source itself—the content that will be linked via the hyperlink—also fits within the claim language and is thus "identified content" when the claim language is read in context, as Apple's expert explained.  Appx1136-1137 (Dr. Terveen showing that a person of ordinary skill in the art would understand "identified content" to include "the linked cross-reference document," *i.e.*, the "document[] linked via the hypertext link annotation[]").

55

Sentius fails to engage with this logic because it has no answer. Instead, it makes a convoluted claim differentiation argument. OB54-56. But that argument misapprehends the Board's holding, resting on the incorrect premise that the Board found *links* to satisfy the reference-work limitation. As just explained, that is not what the Board held.

Sentius then moves away from the construction of "identified content" entirely, arguing instead that the Board's analysis of claim 5 is erroneous because the content to which a link leads is not stored in the term database. OB55-56. This is simply a restatement of Sentius's misguided claim construction argument that "identified content" in claims 1 and 11 (on which claims 5, 15, 39, and 43 depend) must be stored in a term database, not an independent substantial-evidence argument. And Sentius is wrong about this limitation for the reasons previously stated. *Supra* at 34 n.7, 48-51.

### 2. Sentius never distinguished claims 39 and 43 from claims 5 and 15.

Here, as elsewhere, Sentius argues that the Board erroneously treated a set of distinct claims together. This time, it claims the Board "overlooked the differences between claims 5 and 15, on one hand, and

56

claims 39 and 43 on the other," impermissibly treating the two sets of claims "interchangeabl[y]." OB57. And again, Sentius invited the claimed error by itself treating the two sets of claims interchangeably.

In discussing claim 5, Sentius said as to "claims 5, 15, 39, and 45" that "the identified URLs are not the categories of content recited in claim 5 *and those identical dependent claims*." Appx391 (emphasis added). Sentius echoed the same argument when discussing claim 39, stating "Apple does not meet [its] burden with regard to this claim (or claims 5, 15, 39 or 43) because the URLs are not any of the claimed content types." Appx396. Having treated the claims together as "identical," Appx391, Sentius cannot now complain that the Board followed suit. *Supra* at 33.

Further, and relatedly, Sentius never advanced before the Board the specific argument it now seeks to advance as to claims 39 and 43, namely that the prior art failed to teach claims 39 and 43 because it did "not disclose the use and processing of source documents and materials" *at all*. OB58. Other than the "reference work" argument addressed immediately above, *supra* at 54-56, the sole argument Sentius made to the Board about the relevant claims involved claims 2-10 and 37-40:

Sentius argued that the prior art's annotation directories did not contain content *for display* and thus did not satisfy these claims. Appx387-388. This argument has been explored at length above, *supra* at 44-48, and the Board correctly rejected it as meritless, Appx41-42.

In sum, the arguments on claims 39 and 43 that Sentius raises now are not those it made before the Board. The Board did not err in declining to make findings on an argument Sentius never made, and its untimely arguments have been waived.

### D. Sentius's motivation-to-combine argument ignores the Board's reasoning, which is supported by substantial evidence.

In addition to its claim-specific arguments on obviousness, Sentius suggests the Board "did not conduct" any motivation-to-combine "analysis," despite the issue having been raised by the parties. OB49. That is incorrect. The Board considered—and rejected—Sentius's argument against a motivation to combine van Hoff and Rodkin. Appx31-32; *see also* Appx383-384. That factual finding is supported by substantial evidence.

"[A] motivation to combine can be found explicitly or implicitly in the prior art references themselves, in market forces, in design

incentives, or in 'any need or problem known in the field of endeavor at the time of invention and addressed by the patent.'" *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1359 (Fed. Cir. 2017) (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007)). Van Hoff and Rodkin both address the same "field of endeavor," namely, methods and systems for annotating documents with links to related content. *See supra* at 4-13; Appx1095-1096, Appx1101-1102 (Terveen declaration).

Apple's expert explained to the Board why a person of ordinary skill in the art "would have been motivated to modify [van Hoff's] system for merging hypertext cross-references to known information sources … with the method for automatically and periodically updating a remote database with new … destination addresses in [Rodkin]." Appx1103. Adding to van Hoff "the means to maintain and update a central database would facilitate more accurate and up to date hyperlinks," "reduc[ing] the potential of a hyperlink directing a user to an information source that … no longer contained the relevant information or is no longer active." Appx1103-1104. And, Apple's expert continued, a person of ordinary skill in the art "would have

expected success in making such a modification, which is nothing more than applying the well-known technique of periodically maintaining and updating a database to known automated document annotation systems." Appx1104; *see also* Appx1118-1120 (further expert motivation-to-combine analysis). The Board agreed. Appx31-32.

In response to this reasoning, Sentius rehashes the same list of supposed drawbacks of combining van Hoff and Rodkin that it articulated in its Patent Owner Response. OB49; Appx382-384; *see also* OB44-45 (further argument regarding relationship between van Hoff and Rodkin). But Sentius does not mention why the Board rejected its argument: Apple explained to the Board that Sentius fundamentally "mischaracterize[d] [the] proposed combination of Van Hoff and Rodkin." Appx420. The drawbacks Sentius identifies are all predicated on its contention that van Hoff's annotation directories do not disclose claim 1's limitations and therefore must be replaced with Rodkin's local databases for the combination to syndicate database content. OB49; Appx382-384. But Apple explained to the Board that it was not relying on Rodkin to teach the database or syndication limitations, which are disclosed in van Hoff. Appx420. Apple "only relied on Rodkin for

teaching the *automatic* download of content over a network." Appx420; *see also* Appx160-161 (petition for inter partes review); *supra* at 59-60 (summarizing motivation to combine van Hoff with Rodkin to achieve automatic download). Accordingly, Apple's combination did not require replacing van Hoff's annotation directories with Rodkin's local databases, and Sentius's supposed drawbacks to doing so were irrelevant.

Sentius offered no response to this point in its sur-reply—a fact the Board noted in its decision. Appx31 n.12. Nor does it offer one now. Indeed, it does not even acknowledge what the parties disputed below, nor what the Board held. Ultimately, the Board agreed with Apple. Appx31-32. That conclusion, too, is supported by substantial evidence.

First, van Hoff's "dictionary" and "directory" are "databases." Appx27-32. They certainly qualify as "collection[s] of data with a given structure." Appx10-11 (claim construction); Appx1106-1110 (Terveen declaration). And the Board further found that they are capable of accepting data on demand, *see* Appx10-11, because (among other things) van Hoff teaches that a user can modify the dictionary. Appx29-30; Appx1106-1110, Appx1130-1131 (Terveen declaration). The '985 patent

itself recognizes that a dictionary may be a type of database.  Appx611

(4:13-27).

Further as to "syndication," as Apple explained in detail in its

petition for inter partes review, Appx159-161, the van Hoff proxy server

invokes an "Install Cross-Reference Directory subprocedure" to

transmit an annotation directory to the proxy server:

TABLE 1

Pseudocode Representation of Annotation Proxy Procedure

```
Procedure: Install Cross-Reference Directory (DocURL)
{
Retrieve and add document(DocURL) to set of dictionaries used by
Annotation Proxy Procedure
}

Procedure: Uninstall Cross-Reference Directory (DocURL)
{
If DocURL = ""
     {Delete all installed directories}
Else
     {Delete specified directory(DocURL)}
}

Procedure: Request and Merge Document (DocURL)
{
Request and receive document specified by DocURL
For all items in all installed cross-reference directories:
     {
     Find all text matching specified pattern and insert cross-reference to
          corresponding document.
     }
Send merged document to requester.
}
```

Appx160 (annotation in original); *see also* Appx1115.[12]  Because that

---

[12] In the middle of its motivation-to-combine argument, Sentius adds

subprocedure makes the cross-reference dictionary available for download, it satisfies the syndication limitation of the '985 patent (setting aside the automatic nature of the download, provided by Rodkin). Appx145-146; Appx1111-1116. It is therefore not necessary to replace van Hoff's annotation directories with Rodkin's local databases, and Sentius's criticisms of that replacement are therefore misplaced.

## CONCLUSION

For the foregoing reasons, the Court should affirm the Board's Final Written Decision holding that claims 1-23, 25-29, 31, 32, and 35-46 of the '985 patent are unpatentable.

January 19, 2023

Respectfully submitted,

/s/ Alyssa Barnard-Yanni

Mark S. Davies
Melanie L. Bostwick
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC  20005

Alyssa Barnard-Yanni
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
(212) 506-5000

*Counsel for Appellee*

---

that "substantial evidence d[oes] not support … finding that van Hoff and Rodkin combined to produce the claimed systems and methods." OB50. Sentius's specific arguments that van Hoff and Rodkin combined fail to teach the relevant claims are addressed above.

# CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this brief contains 12,580 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Alyssa Barnard-Yanni*
Alyssa Barnard-Yanni
*Counsel for Appellee*